THE ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

COBB, BLAISDELL & CO.

1. MEASURE OF DAMAGES—*liability of common carrier for delay in transportation of grain.* If a railroad company fails to transport grain delivered to it for that purpose to its point of destination within a reasonable time, and the price of grain declines in the market at the point to which it is consigned, the owner of the grain is entitled to recover the difference between the market price at that point when it should have arrived and the time it actually does arrive.

2. If, in consequence of unreasonable delay on the part of a railroad company in the transportation of grain, there ceases to be a market for the grain at the point to which it is consigned, the owner may, without unreasonable delay, ship the grain to some point where it can be sold for the most advantageous price, dispose of it to the best advantage, and hold the railroad company for the loss.

3. SAME—*extent of proof required of plaintiff in suit for loss on grain by reason of delay in its transportation.* In a suit against a railroad company for unreasonable delay in the transportation of grain, it is not sufficient for the plaintiff to prove that, when the grain arrived after the time it should have arrived, he realized a specific sum for the grain, and then stop; but he should prove, clearly, what disposition was made of it, how long, if at all, it was stored, and at what expense, and, if sold, the price it brought, and the expense of sale.

4. EVIDENCE—*what competent as tending to prove a market price.* In a suit against a railroad company for unreasonable delay in the transportation of grain, where the plaintiff has proved the market price of grain at the point to which it was consigned at the time when, if there had been no unreasonable delay, it would have arrived, it is competent for the defendant to prove that the plaintiff sold grain at that point, during the

time the grain was actually arriving there, at a certain price, as a fact tending to establish the market price at that place at that time.

5. Same—*correspondence of a party not competent on his behalf.* The correspondence between the plaintiffs in a suit, and their correspondents with whom the defendants are in no way connected, is not competent evidence as against the defendants.

6. Bills of lading—*prima facie evidence that goods were in good condition, if so described therein.* Where a common carrier receives goods for shipment, and gives the consignor a bill of lading, in which the goods are described to be in apparent good order, the bill of lading is *prima facie* evidence, in a suit against the carrier, that the goods were in good condition.

7. Interest—*can only be recovered when provided for by statute.* The recovery of interest depends entirely upon the statute, and unless authorized by the statute it can not be recovered.

8. Same—*recoverable in trespass and trover.* Where property has been wrongfully taken, or converted into money, and an action of trespass or trover may be maintained, interest may properly be recovered.

Appeal from the Circuit Court of Alexander county; the Hon. David J. Baker, Judge, presiding.

Messrs. Williams, Burr & Capen, for the appellant.

Mr. D. T. Linegar, Mr. Wm. J. Allen, and Mr. John M. Lansden, for the appellees.

Mr. Justice Craig delivered the opinion of the Court:

This was an action of assumpsit, brought by appellees against appellant. to recover damages for unreasonable delay in the transportation of corn and oats, shipped at various stations on appellant's road, in the spring of 1865, consigned to Cairo.

A trial of the cause was had before a jury, which resulted in a verdict against appellant for $43,560.25. A motion for a new trial was entered, which the court overruled, and rendered judgment upon the verdict. The appellant brings the record here by appeal, and assigns various errors for a reversal of the judgment, which, so far as may be material to a

correct decision of the points involved in the case, will be considered.

The question raised by appellant in regard to impaneling the jury it is not necessary to consider, as the judgment will have to be reversed upon points arising upon the merits of the case, and upon another trial there will probably be no difficulty in the parties selecting a jury according to the plain provisions of the statute, which will be acceptable to each.

Appellees, upon the trial, introduced evidence tending to prove that the corn and oats involved in this action, after they had been delivered to the railroad company for shipment, should have arrived at Cairo by the 10th day of April, 1865, if no unreasonable delay had occurred in the transportation. The evidence shows the grain did not arrive at that time, but, on the contrary, the first car arrived on the 17th day of April, and from that time the grain continued to arrive until the 20th day of May.

It is clear that if appellant failed to transport the grain to its point of destination within a reasonable time, and the price of the grain declined in the market at Cairo, the point to which it was consigned, then appellees would be entitled to recover the difference between the market price at Cairo when it should have arrived and the time it actually arrived; or if, in consequence of the delay, there ceased to be a market for the grain at Cairo, then it would have been the privilege and right of appellees, without unreasonable delay, to ship the grain to some point where it could have been sold for the most advantageous price, dispose of it to the best advantage, and hold the appellant for the loss.

It follows, then, that one of the vital facts in the case for the jury to determine, was the market price of the grain at Cairo when, in due course of transportation, it should have arrived, and the market value at the time it actually arrived.

Upon this point in the case, the plaintiffs introduced evidence tending to prove the market price of oats to the 10th day of April was from ninety to ninety-five cents per bushel. They

then introduced evidence tending to show that they realized less than thirty-five cents per bushel for the oats after its arrival.

For the purpose of rebutting the *prima facie* case made by appellees. appellant offered to prove that. on the 9th day of May, 1865, a day upon which the grain was arriving. appellees sold between five and six car loads of oats at seventy-five cents per bushel.    This evidence was objected to, and the court would not permit it to go to the jury.

There can be no doubt but. in this ruling of the court, there was error. and that, too, upon a point very material in the case.    If appellees sold oats in Cairo at that time for seventy-five cents per bushel, that was a fact proper for the consideration of the jury, tending to establish the market price of the grain at that date. and we are unable to conjecture upon what principle appellant was denied the right to establish the market value of oats at that time.

The fact that appellees had proven they realized only thirty-five cents per bushel for the oats, renders the error of the court still more apparent, and clearly establishes the necessity for the admission of the rejected evidence.

For the purpose of establishing the market price of corn, appellees introduced in evidence a correspondence between themselves and a firm of Bacon & Co.    The defendant was, in no manner whatever, connected with these letters. and we are aware of no rule of law under which they were admissible. Had appellees desired the evidence of Bacon & Co. upon this branch of the case, they should have called them as witnesses, when their testimony could have been subjected to a cross-examination.    Neither the letters of Bacon & Co., nor those of appellees written to them, were competent evidence to go to the jury, and it was error for the court to permit them to be read as evidence.

The next question presented arises upon the 23d instruction given for appellees, which is as follows :

"The court instructs the jury, that, in this case, they may allow interest, if they believe, from the evidence, that the circumstances of the case are such as amount to a conversion of the property by the defendant, or that there was fraud on the part of the defendant or its agents, or that there was a gross neglect of duty by the defendant. As to whether interest should be allowed or not, you are to be governed by all the facts and circumstances in evidence before you, touching the character, degree and extent of defendant's neglect or breach of contract or duty."

. Under this instruction it is evident, from the amount of the verdict, the jury allowed interest.

At the common law, interest was not allowed in any case. Its recovery depends entirely upon our statute, and unless authorized by the statute it can not be recovered. *City of Pekin* v. *Reynolds*, 31 Ill. 530.

While our statute has received a liberal construction, yet we are aware of no case similar to the one under consideration in which interest has been allowed.

In *Bradley* v. *Geiselman*, 22 Ill. 494, the recovery of interest was sustained. The action was, however, trespass, where property had been wrongfully taken and sold, and converted into money.

In the case of *Chicago and Northwestern Railway Co.* v. *Ames*, 40 Ill. 249, interest had been recovered and the judgment was sustained. The facts in that case, however, would have authorized an action of trover, for a wrongful conversion of the property. The same may also be said of the case of *Northern Trans. Co.* v. *Sellick*, 52 Ill. 249, where a recovery of interest was sustained.

In *Chicago and Northwestern Railway Co.* v. *Schultz*, 55 Ill. 421, the recovery of interest was sustained on the authority of *Bradley* v. *Geiselman*, *supra*, the action having been trespass to personal property.

These are the authorities, in our own State, cited and relied

upon by appellees to justify the recovery of interest in this case; but they do not sustain the position assumed. The doctrine established by these authorities is, where property has been wrongfully taken, or converted into money, and an action of trespass or trover may be maintained, interest may properly be recovered. And this is based upon the statute, which authorizes interest when there has been an unreasonable and vexatious delay of payment.

There can be no difference between the delay of payment of a moneyed demand and one where property has been wrongfully taken, or taken and converted into money or its equivalent—the two rest upon the same principle.

But in this case there is no pretense of a trespass or conversion of property, or of any fraud practiced. The action is based solely on the alleged fact that appellant failed to ship and deliver grain within a reasonable time, and that the grain was damaged *in transitu.*

If interest could be recovered upon the facts disclosed by this record, we can scarcely conceive of any action brought to recover damages in which it might not be allowed.

The instruction was not authorized by the facts in the case, and should not have been given.

It is insisted by appellant that the court erred in giving appellees' second instruction, which was as follows :

"If you believe, from the evidence, that plaintiffs are entitled to recover upon the counts in their declaration upon corn and oats, then the measure of damages in relation thereto is the difference between what they were actually able to realize for said grain and what they would have realized for the same had it arrived at its destination without unreasonable delay, and this amount you are to determine from the evidence."

This instruction does not correctly state the law. Appellees, upon the arrival of the grain, if there was then no market for it in Cairo, were bound to find a speedy market, and dispose of it on the most advantageous terms ; yet, under this

154    I. C. R. R. Co. *v.* Cobb. Blaisdell & Co. [Jan. T.

Opinion of the Court.

instruction, they could hold the grain in store at a heavy expense, until the entire value of it would be consumed by storage, and then recover the full market price of appellant at the time it should have arrived.  Such would not be just, and we can not give it our sanction.

It is but equitable to require appellees to prove, clearly, the disposition made of the corn and oats after its arrival. If it was stored, they should show how long and at what expense.    If sold, the price the grain brought should be given, and the expense of sale.    It is not enough for them to show they realized a specified sum for the grain, and then stop.

It is also insisted by appellant, that the court erred in giving appellees' nineteenth instruction, which read as follows:

"If the jury believe, from the evidence, that the defendant received the corn and oats claimed to be in a damaged condition when it arrived, and gave bills of lading acknowledging the receipt of such grain in apparent good order, then such bills of lading are *prima facie* evidence that the grain mentioned in such bills of lading was, at the time it was shipped, in good order and condition, and is binding on the defendant unless rebutted ; and to overcome such *prima facie* evidence, it is incumbent on the defendant to introduce such evidence as will show, to the satisfaction of the jury, that such grain was not, in fact, in good order and condition."

The exception taken to this instruction we do not regard as tenable.    When a common carrier receives goods for shipment, and gives the consignor a bill of lading, in which the goods are described to be in apparent good order, we see no reason why the bill of lading should not be held *prima facie* evidence that the goods were in good condition.    This was held to be the law in *Bissel* v. *Price*, 16 Ill. 408 ; and the same doctrine was reaffirmed in the case of *Great Western Railroad Co.* v. *McDonald*, 18 Ill. 172.

For the errors indicated, the judgment will be reversed and the cause remanded.                              *Judgment reversed.*