### Ira R. Harvey v. Wm. R. Hamilton.

1. Contracts—*Courts Enforce but do not Make.*—Courts can not make contracts for parties, but can construe and enforce them.

2. Interest—*As Damages.*—A recovery of interest in this State can not be sustained unless authorized by our statutes.

3. Same—*On Unliquidated Damages.*—Our statute relating to interest does not authorize the recovery of interest on unliquidated damages for a failure to turn out property.

4. Same—*On Damages Not Ascertainable by Computation.*—Where a contract to convey land is so indefinite in its description as to render it incapable of specific performance, and its value in money unknown, and there is no way in which the vendor can, before verdict, know even approximately how much he is liable for, the rule of permitting interest upon damages ascertainable by computation, or from well established market prices, can not be applied.

5. Instructions—*Submitting Questions of Law.*—An instruction which states " If the jury believe from all the evidence given in the case that the plaintiff *is entitled to recover* against the defendant, then," etc., is erroneous, as it submits a question of law.

**Memorandum.**—Assumpsit for breach of contract. Appeal from the Circuit Court of Cook County; the Hon. Samuel P. McConnell, Judge, presiding. Heard in this court at the March term, 1894. Reversed, unless excess of legal damages are remitted, etc. Opinion filed May 28, 1894.

The opinion states the case.

Appellant's Brief, James Frake and B. W. Ellis,
Attorneys.

The recovery of interest in this State depends entirely upon statute, and unless authorized by the statute can not be

recovered.  I. C. R. R. v. Cobb, 72 Ill. 148; Sammis v. Clark, 13 Ill. 544; Hill v. Allen, 13 Ill. 596; Aldrich v. Dunham, 16 Ill. 403; Stern v. The People, 9 Brad. 412.    Interest is the creature of the statute.    City of Chicago v. Allcock, 36 Ill. 384.

Our statute allows interest for all moneys after due on any bond, bill, promissory note or other instrument in writing, and on money lent or advanced for the use of another on balance of liquidated accounts and on money received for another's use and retained without his knowledge.   Ch. 74, Sec. 2, R. S. Ill.; Buckmaster v. Grundy, 8 Ill. 633.

" No interest can be allowed upon a recovery for a breach of an executory contract under our statute.    The allowance of interest in this suit can not be sustained under the last clause of the section which gives interest on money withheld by an unreasonable and vexatious delay of payments. For under that clause the question of 'delay and vexation' is one of fact for the jury, and by no possible construction was any money due upon the contract between the parties, and so there could be no vexatious delay in payment."    Kelderhouse v. Lainous, 1 Brad. 69; I. C. R. R. Co. v. Cobb, Blaisdell & Co., 72 Ill. 152; Perley on the Law of Interest, 21.

Appellee's Brief, Peck, Miller & Starr, Attorneys.

Breach of covenant to convey land.   The measure of damages is the value of the land at the time the conveyance should have been made, with interest thereon.  Gale v. Deane, 20 Ill. 320; Major v. Dunnavant, 25 Ill. 262; 1 Sutherland on Damages, Sec. 105;   Cock v. Taylor, 3 Overton (Tenn.), 49; S. C., 5 Am. Dec. 650; Talbott v. Bedford's Heirs, 1 Cooke  (Tenn.), 447;  Perkins v. Hadley, 46 Haywood (Tenn.), 143; Morris v. Phelps, 5 Johnson (N. Y.), 49; Casswell v. Wendell, 4 Mass. 108; Cornell v. Jackson, 3 Cush. 506.

" The value of property constitutes the measure or an element of damages in the great variety of cases, both of tort and of contract; and where there are no such aggravations as call for or justify exemplary damages in actions in which such damages are recoverable, the value is ascertained and

Harvey v. Hamilton.

adopted as the measure of compensation for being deprived of the property, the same in actions of tort as in those upon contract. In both cases the value is the legal and fixed measure of damages, and there is no discretion with the jury. It is so between vendor and vendee on the failure of either to fulfill a contract of sale and purchase; between employer and employe, on a contract for the manufacture of specific articles, where there is a departure from instructions by an agent, or a loss through his negligence or misconduct, or that of a bailee or trustee, as well as where there is a tortious taking or conversion by one standing in no direct relation to the owner; and, moreover, the value is fixed in each instance on similar considerations at the time when, by the defendant's fault, the loss culminates.

The party who is entitled to recover and must accept its value in place of the property itself, should always be allowed interest on the value from the date at which the property was lost, or destroyed, or converted; whether he recovers the value for the failure of a vendor or bailee to deliver, or by reason of the destruction, asportation, or conversion of the property by a wrong-doer, interest is as necessary to the complete indemnity as the value itself. The injured party ought to be put in the same condition, as far as money can do it, in which he would have been if the contract had been fulfilled, or the tort had not been committed, or the loss had been instantly repaired when compensation was due." 1 Sutherland on Damages, 2d Ed., Sec. 105.

There is a small class of cases in which the larger measure of damages is laid down, viz., the value at the time of the verdict, if that be larger than the former value with interest. This class is the one in which the defendant is able to convey, and willfully refuses to convey, without cause, desiring himself to speculate on the advance of the property being greater than the former value and interest, or where the defendant fraudulently makes a contract of sale of property, of which he had no title and knew he had none, but deceived the plaintiff into supposing that he was dealing with the real owner. In such cases the courts hold that he can not

profit by his own wrong.    Baldwin v. Munn, 2 Wend. 399; Wilson v. Robertson, 1 Brunner, U. S. C. C. 109; 1 Overton, 464; Sween v. Steele, 5 Iowa, 352; 10 Iowa, 374; Foley v. McKeegan, 4 Iowa, 1; Stewart v. Noble, 1 Green, Iowa, 26; Baltimore P. B. & L. Soc. v. Smith, 54 Md. 187; Sandford v. Cloud, 17 Fla. 532; Johnson v. Hamilton, 36 Texas, 270; Thompson v. Guthrie, 9 Leigh, 101; McKinnon v. Burrows, 3 Up. Can. Q. B. (O. S.) 590; Hopkins v. Lee, 66 Wheat. 118; Williams v. Glenten, L. R.. 1 Chancery App. 200; Engel v. Fitch, L. R., 3 Q. B. 314, 4 Ibid. 659; Allen v. Anderson, 2 Bibb (Ky.) 415; McConnell v. Dunlap, Hardin (Ky.) 41; Patrick v. Marshall, 2 Bibb (Ky.) 46; Fisher v. Kay, 2 Bibb (Ky.) 434; Margraf v. Muir, 57 N. Y. 155.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

Suit was brought by the appellee, Hamilton, against the appellant, Harvey, for damages for the breach of the following contract:

"CHICAGO, ILLS., November 17, 1885.

MR. W. R. HAMILTON.

*Dear Sir:*    I hereby agree to lease my building at Pacific Junction, known as the Rotary Plow Factory Co., at $100 per month for the first year, or the privilege hereafter of buying, if they choose, at $10,000, or if building should not be suitable, will donate 200 feet square feet along railroad for company to build on.    Will allow you as commission for said location, one-third interest in five acres located near said works.

I. R. HARVEY."

Acting under the agreement above quoted, Hamilton, with the approval of Harvey, procured certain persons, doing business under the style of the Maxwell Patent White Lead Company, to take a lease of the factory by a lease dated December 18, 1885, for a term of two years, from January 1, 1886, to December 31, 1887, at a rental of $1,000 for the first year, and $1,200 for the second year, with the privilege of a renewal of the lease for an additional term of three years.

The Maxwell Company entered into possession under the lease, on January 1, 1886, and remained and carried on a manufacturing business there for five years, with indifferent success, and then removed.

Having, in the manner indicated, secured a tenant who was accepted as such by the appellant, the appellee demanded a conveyance to him of the one-third of five acres of land promised as a commission for so doing. A conveyance being refused, this suit for damages was begun, and from a judgment entered upon a verdict for $4,899, in favor of appellee, this appeal is prosecuted.

The appellant contends that the "location" for which the commission was agreed to be paid, referred not to the renting of the factory, but to a permanent location at the place indicated, either by the purchase of the factory that was leased, or by building upon the land offered to be donated for that purpose.

We do not concur in that contention. It appears from the evidence that the parties had in mind when the proposition was made, the securing of the Maxwell Company as a tenant and optional purchaser.

The appellant was the owner of a considerable amount of unoccupied land in the suburb to Chicago known as Pacific Junction, as well as being the owner, in equity at least, of the vacant building called the plow factory. That he was disappointed in the results he hoped would follow, in the way of selling lots out of his property, from the location of the Maxwell Company's manufacturing business at that point, furnishes no legal excuse for not complying with his contract with the appellee. It was simply his misfortune if no beneficial results flowed from the location of that business there. Courts can not make contracts for parties, but may only construe and enforce them.

The proposition relates to the accomplishment of either one of the three results, viz.: a lease of the plow factory building, a privilege to buy it, or arrangements whereby a new building should be erected upon land to be donated.

The whole instrument construed together, we think, most clearly requires the word "location," as therein used, to

apply to either one of the results which the parties contem plated producing, and that a "location" was secured when an accepted lessee of the factory was procured for Harvey by Hamilton.

Such being the case, both law and justice concur in requiring Harvey to pay Hamilton whatever damages resulted to the latter from the refusal of the former to abide by his contract; and had no error of law been committed on the trial of the cause the judgment would be affirmed.

It is apparent that a very considerable proportion of the amount of the judgment is made up by the allowance of interest on the value of the property refused to be conveyed to Hamilton, from the alleged date of the breach of contract to convey.

The court instructed the jury that "the jury should ascertain the amount of such damages at the time of the breach of contract, and add thereto the interest upon such amount from the time of such breach of contract down to the date of the verdict."

A recovery of interest in this State can not be sustained unless authorized by our statutes. If not authorized by the statute it can not be recovered. R. R. Co. v. Cobb, 72 Ill. 148; Cooper v. Johnson, 27 Ill. App. 504.

It is unnecessary to quote the statute relating to interest, but is sufficient to say that it does not authorize the recovery of interest on liquidated damages for a failure to turn out property.

The demand here is neither for money due or to become due on any instrument in writing; for money lent or advanced or due on account stated, or had and received and retained, or withheld vexatiously.

Under the authorities it is sometimes a matter of much difficulty to determine when the damages are unliquidated to the extent of forbidding a recovery of interest.

But it is safe to say that in Illinois interest is not allowable on unliquidated demands, in any case, where the amount of damages is not ascertainable by simple computation, or by reference to generally recognized standards such as market prices.

Such a rule was commented upon by the New York Court of Appeals, in the case of McMahon v. N. Y. & E. R. R. Co., 20 N. Y. 463, where it was said :

" The old common law rule which required that a demand should be liquidated, or its amount in some way ascertained, before interest could be allowed, has been modified by general consent, so far as to hold that if the amount is capable of being ascertained by mere computation, then it shall carry interest, and this court, in the case of Van Rensselaer v. Jewett, went a step further and allowed interest upon an unliquidated demand, the amount of which could be ascertained by computation, together with a reference to well established market values; because such values in many cases are so nearly certain, that it would be possible for the debtor to obtain some proximate knowledge of how much he was to pay. That case went, I think, so far as it is reasonable and proper to go in that direction. So long as the courts adhere even to the principles of that case, they are not without a rule which it is possible to apply. The rule itself is definite, and the only uncertainty which it introduces is that which necessarily attends the settling of market rates and prices."

Cases where interest has been allowed in actions of trover and upon breaches of covenants of warranty and for breaches of contracts to convey land where the consideration has been paid, are inapplicable to the facts of this case.

Here there was an agreement to convey an undivided one-third interest in some land so indefinite in description as to render the contract incapable of specific performance. Hamilton v. Harvey, 121 Ill. 469.

There was no specific property to which the appellee could lay claim, and hence its value in money was not known, and there was no way in which the appellant could, before verdict, know even approximately how much he was liable for to the appellee.

That the rule heretofore adverted to of permitting interest upon damages ascertainable by computation, or from well established market prices, can not be applied in this case, is

made very plain from the testimony of witnesses on the trial, who ranged in opinion from $150 per lot previous to the time the lease to the Maxwell Company was made, to $400 per lot, "when the location was decided upon," which was before the alleged breach occurred, and the value per lot found by the jury at "$213 per lot," as stated in the brief for appellee.

With such a range in estimated values it surely may not be said that there was at the time of the breach a well established market price, from which, without the verdict of a jury, the appellant could know how much he would have to pay, or was liable for.

The fourth instruction was likewise erroneous for the same reason, and for the further reason that it submitted to the jury a question of law, as follows: "And if they further believe from all the evidence given in the case, that the plaintiff is entitled to recover against the defendant, then," etc.

But, inasmuch as the appellant could not have been prejudiced thereby, for the reason that it added something more to be found against him before a verdict unfavorable to him could have been given by the jury, we are not inclined to place much stress upon it.

With, therefore, the instruction regarding the allowance of interest constituting such a substantial error as in our opinion demands a reversal of the judgment and a remanding of the cause, it will be so ordered, unless the appellee shall within ten days remit in this court, from the judgment, down to the sum of $2,505.20; and if such a remittitur be entered, we will affirm the judgment for that amount.

We are prompted to this course in order that the parties may come to an end of their litigation, which has now, in one form or another, been pending for more than seven years over this contract, and because we believe that thereby substantial justice will be done.

The amount of $2,505.20 is arrived at by us in adopting the figures shown on page 7 of appellant's brief, as constituting the average of the valuations placed upon the property by the parties themselves.