Anna M. Klinke, Appellee, v. Great Northern Life
Insurance Company, Appellant.

Opinion filed March 2, 1943.

WHITMAN, HOLTON & TEWS, of Chicago, for appellant; HERBERT R. TEWS, of Chicago, of counsel.

GREEN & HOAGLAND, of Alton, for appellee; J. J. MIDDLETON, of Alton, of counsel.

MR. JUSTICE BRISTOW delivered the opinion of the court.

Plaintiff Anna M. Klinke brought suit against the defendant, the Great Northern Life Insurance Company, a corporation, in an action at law, to recover as beneficiary the amount of insurance benefits claimed under a written contract of accident and health insurance issued to Lawrence A. Klinke, plaintiff's deceased husband. From a judgment for $3,370 entered by the circuit court of Madison county on May 8, 1942, on a verdict for the plaintiff, after overruling a motion

by the defendant for judgment *non obstante veredicto* and a motion for a new trial, the defendant prosecutes this appeal. For the sake of simplicity, we will refer to the appellant as the defendant and the appellee as the plaintiff.

The complaint in this case consisted of two counts. The first alleges the issuance of an insurance contract by the Mutual Health and Accident Association of America on December 26, 1907; that under the contract the insurer promised to pay the plaintiff the sum of two thousand dollars ($2,000) for loss of life of the insured resulting directly and independently of all other causes and solely through external, violent and accidental means; that the death benefit by reason of the policy, having been continued in force for more than 11 years was increased by 50 per cent; that the defendant, the Great Northern Life Insurance Company, on June 1, 1933, assumed the insurer's obligations under said contract; and that while the said contract was in full force and effect, insured sustained bodily injuries through accidental means by falling six to eight feet over a banister railing of a stairway, and as a result thereof died on August 10, 1939; and that plaintiff thereafter had performed all conditions necessary to be performed to justify recovery on that section of the insurance contract.

The second count of the complaint sets forth the issuance of the same contract and claims liability of the insurer on the basis of a promise to pay to the plaintiff a funeral benefit of one hundred dollars ($100); and that defendant had refused to pay said sum except that on August 30, 1939 the defendant company did issue to the plaintiff its check in the sum of one hundred dollars ($100), and later on August 29, 1940 did issue and deliver to the plaintiff another check for fifty dollars ($50); and that both checks were delivered to the plaintiff in payment and in full discharge of all rights under said contract of insur-

ance; that plaintiff did receive said checks, but did not acquiesce in the conditions imposed upon her by the company, and did not cash said checks.

The defendant contends that the judgment of the court below should be reversed for the following reasons:

First; that the evidence showed that the death of the insured resulted from disease and not solely through external, violent, and accidental means.

Second; that the plaintiff did not institute her suit within the time limit expressed in the policy.

Third; that checks in the sum of one hundred dollars ($100) and fifty dollars ($50) were received by mail by the plaintiff; and, such constituted an accord and satisfaction of all liability.

Fourth; that the court committed reversible error in not permitting the defendant to amend the answer on the day when the trial began.

Fifth; that the court erred in improperly admitting evidence over the objection of the defendant concerning the happening of the accident in question.

It appears in the evidence that Lawrence A. Klinke, the insured, was a man almost 65 years of age, six feet tall, and weighing approximately two hundred twenty-five pounds. Throughout his lifetime, he had worked as a butcher and at other occupations involving considerable labor. During the last two years of his life, he was engaged by the mayor of the city of Alton as a license inspector. He did not own an automobile, and he did an endless amount of walking to perform the duties of this office. He went up and down stairs and never showed any evidence of exhaustion. Only once in his lifetime was he required to have the services of a doctor, and that was to treat him for a cold. His appearance of excellent health and his activity in life continued without any change right up until the night of his fatal accident.

On the night of July 31, 1939, the insured's wife was awakened from her sleep by a heavy thud occurring

on the floor below. She immediately went to the foot of the stairs in the hallway and found her husband, Lawrence A. Klinke, lying parallel to the stairs, his head near the post at the foot of the stairs. Over defendant's objection, plaintiff was allowed to tell what her husband said at that time with reference to the accident, namely; that he had tripped on the sixth or seventh step, and had tried to catch himself on the banister rail but his hand slipped off and he lost his balance and went over the rail to the floor below. As the result of this accident, the insured suffered two broken ribs and a large swollen place on his head, and complained of pain in his side. He was assisted to his bedroom by his wife and daughter that night, and taken to the doctor's office the next morning. He returned with his left side taped above the waist line, and went to bed. From then, he grew steadily worse. On the following Monday he was taken to the hospital where he remained until Thursday, August 10, when he died.

Doctor W. W. Billings was called to testify on behalf of the plaintiff, wherein, he said he had known the insured for nine years, but that he had never treated him. He testified that he was present when an autopsy was performed on the insured's body at the hospital immediately following his death; that this autopsy revealed that the insured was suffering from a dilatation of the heart, and that in his opinion that dilatation of the heart in this particular instance was the immediate cause of the death; that he had died a cardiac death. He further testified in answer to an hypothetical question that the fall herein before described might or could be the cause of the dilatation of the heart.

It further appeared from the evidence, both from the testimony of Dr. Billings and Dr. Hagerbusch, who was the pathologist called by Dr. Billings to perform the autopsy, that the insured was suffering from leukemia; and that leukemia is constitutionally a disease

of the blood forming organs of the body; that some leukemia runs a short course of a few weeks or a few months or it may run for a number of years; that there was a definite finding of lympho-sarcoma, it being impossible to say as to the exact duration of this disease except that it would of necessity be for a period of greater than two years; and that such disease is practically incurable. Both doctors agreed that there was no causal connection between the disease and the dilatation of the heart.

In other words the facts very plainly resolve themselves into these propositions, namely that the insured did suffer an accident that assumed violent and severe proportions. For a two hundred and twenty-five pound man to fall six to eight feet and land on a hard surface, cannot be viewed too lightly; next, that such a fall might or could cause a dilatation of the heart; and next, that this man did die a cardiac death; lastly, that the insured was suffering from a cancer which had no connection with the dilated heart.

As to whether or not recovery can be had under an accident policy, when death is claimed to have been the result of violent, external and accidental means, cases divide themselves into three categories. First, when there is a traumatic injury, and the insured dies from an idiopathic result produced thereby. A good example of this class is where trauma causes a laceration, from which blood poisoning ensues, which causes death. Second, there is that class of cases where accident causes the death of a person who might be afflicted with an incurable disease such as cancer, but which disease had no causal connection with the immediate cause of death. For instance, one may be in the throes of death with tuberculosis, yet if he is struck by a locomotive and instantly killed, one would hardly argue that he did not die an accidental death. Then, finally, there is that class of cases where one is

suffering from a serious bodily infirmity and that condition is aggravated by an accident, resulting in death. For example, one may have a bad heart due to disease, and suffer an accident, which in conjunction with his heart condition causes his death, but which accident, alone and without the bad heart condition would not cause death.

The courts of Illinois uniformly hold that there can be recovery in the first two classes.

The plaintiff contends that the instant case falls within the second classification. With this contention, we agree. The only competent medical proof of the cause of death was that offered by the plaintiff in Dr. Billings' answer to a hypothetical question. Doctor Hagerbusch was improperly permitted to give his opinion as to the cause of death over the objection of the plaintiff. This, in light of the highly controverted issue as to the cause of death—whether from the accidental injury or disease, was a distinct invasion of the province of the jury. (*Davis v. East St. Louis & Suburban Ry. Co.*, 290 Ill. App. 540, and *Fellows-Kimbrough v. Chicago City Ry. Co.*, 272 Ill. 71.) The question of whether insured died as a result of bodily injuries effected directly and independently of all other causes and solely through external, violent and accidental means, was one of the facts for the jury to decide. It obviously appears from what has been said heretofore that there is adequate proof in the record to support the jury's findings that the insured did die solely from accidental means. There is no competent evidence to support any other conclusion. (*Horrie v. Industrial Casualty Ins. Co. of Bloomington*, 272 Ill. App. 252; *Paoli v. Loyal Protection Ins. Co.*, 289 Ill. App. 87; *Rowden v. Travelers Protective Ass'n of America*, 201 Ill. App. 295.)

The appellant cites many cases in its brief in support of its contention that the plaintiff should be

denied recovery under the policy in question in light of the factual situation hereinbefore outlined. All of these cases are clearly distinguishable from the case at bar. For instance, in the case of *Welte v. Metropolitan Life Ins. Co.*, 305 Ill. App. 120, the court said, ''The complaint alleges that the slipping and falling of the insured acted upon this ulcer, causing it to rupture and bring about the necessity of an operation, which caused his death. Had there been no ulcer, there would have been no injury, as an ulcer is not a part of the normal person's anatomy.'' The accident in the instant case caused a dilated heart, which produced death and which was not related in any manner to the insured's diseased condition.

The appellant also urges that this suit is barred by the limitation period of six months fixed in the policy of 1907. The plaintiff's reply to that contention is that such a limitation provision is void by reason of the Standard Provisions Statute adopted by the legislature of Illinois in 1915, which provided that no insurer may issue a contract of insurance providing for a shorter period for instituting a suit thereunder than two years. The defendant seeks to answer this reply with the contention that since the policy was originally issued in 1907, legislation enacted in 1915 would have no bearing upon that provision of the policy. The plaintiff then seeks to answer this argument with this line of reasoning; namely, the defendant took over the original contract of insurance in 1933, and the terms and conditions upon which this was done were tantamount to a novation which ripened into a new contract, and, being after 1915, the two-year limitation must be made a part thereof. As a further contention, the plaintiff says that the original contract of insurance covered the deceased from December 1907 to March 1908, and provided the terms and conditions under which the insured could renew this contract. He contends that each time there was a pay-

ment on the premium, the payment amounted to the making of a new contract of insurance. Plaintiff is supported in this contention by the case of *Dickinson v. Pacific Mut. Ins. Co.,* 319 Ill. 311.

In the *Dickinson* case is the identical question of whether or not a limitation period in a contract of insurance issued prior to 1915 would prevail as against the two-year period as provided in the law of 1915. The Supreme Court held that it would not prevail, and did so in the following language: "If the policy sued upon was issued in 1910, the Standard Provisions Statute cannot be held to apply, for the language of the amendment provision of the policy cannot be construed to refer to a statute that may be enacted in the future and the legislature has no power to change or vary the terms of a contract of this character. If, on the other hand, the policy expired at the end of each twelve months and was renewed by payment of the premium, then the policy was issued as of the date of the renewals, and the Standard Provisions Statute, making the period of limitation in which action is to be brought two years instead of six months, as provided in the policy, does apply." It is true that in the *Dickinson* case there was a recital in the policy providing that should there be any claim in it in conflict with the State law, the policy should be considered as amended to conform thereto. We do not think that the absence of this provision from the instant policy is a basis for a distinction. Section 975 of chapter 73, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 66.1038] supplies that element in this language, "A policy issued in violation of this article (having reference to the Standard Limitations Provisions) shall be held valid but shall be construed as provided in this article, and when any provision in such policy is in conflict with any provision of this article the rights, duties, and obligations of the insurer, the policyholder and beneficiary, shall be governed by the

provisions of this article.'' We, therefore, conclude that the defense urged by the defendant that this action was barred by the six months' limitation period cannot be sustained.

Giving attention now to the third contention of the defendant as to why this cause should be reversed; namely, that two checks, the first one in the sum of one hundred dollars ($100) and the second in the sum of fifty dollars ($50) were mailed to the plaintiff, and had written on the back thereof ''Complete and unconditional release of the defendant from all liability under the insurance policy in question.'' The plaintiff retained these checks, but did not cash them. However, she did say to the defendant that she was unwilling to accept them in full settlement of her claims.

In paragraph 5 of count 2 of the plaintiff's complaint, it is alleged that under paragraph ''L'' of the policy, funeral benefits are payable in the amount of one hundred fifty dollars ($150). The defendant answering that paragraph admitted the funeral benefits in that amount were payable. There appeared, therefore, to be no dispute between plaintiff and the insurer in this regard. The plaintiff contends that the tendering by the defendant to the plaintiff a sum which they admit was due under the policy did not constitute a consideration for an accord and satisfaction of any disputed liability on the claim that plaintiff makes under count 1, for benefits due her for accidental death. In support of this, they cite the case of *Knights Templars & Masons Life Indemnity Co. v. Crayton,* 209 Ill. 550, aff'g 110 Ill. App. 648, in which suit was brought upon an insurance policy and defended upon the theory of accord and satisfaction. There the policy provided for a payment of $5,000 together with all assessments paid by the insured upon the policy in the event of death, but that in the event that insured died as a result of self-destruction, the

policy was null and void and no payments were to be made thereunder, except for the amount of the assessments paid by insured upon the policy. On the death of the insured the company repaid the assessments, but disputed any other liability upon the theory that the insured killed himself. On the back of the check. for the assessments was expressly written ''being payment in full of all demands under Policy No. 2174, on the life of John Crayton, deceased.'' The Supreme Court, in holding that this payment did not constitute accord and satisfaction, said at page 558: ''The policy in this case provides that appellant will pay to appellees, as beneficiaries, $5,000 if John Crayton dies from any other cause than suicide, and also pay all assessments that he paid under said policy. If, then, the assured did not die a suicide, as the trial and Appellate Courts have found he did not, appellant owed and should have paid to appellees, or their legal guardian, upon receipt of notice and proof of death, or within sixty days thereafter, both sums—that is, the $5,000 and the $179 paid in assessments. By its supposed settlement with the guardian it paid her one of the sums that it owed her. There was no question about that amount being due, and the payment of it could not, in any sense, be said to be a settlement of anything. It was simply payment of a sum of money due. At the time of that settlement, if John Crayton was not a suicide, $5,000 still remained due to appellees, and was not paid within sixty days from the receipt of notice and proof of death. By the payment of a portion of a whole debt, the appellant could not, by any stipulation made with the guardian, be released from its liability to pay the entire debt thus owing, and the release relied upon was ineffectual because there was no consideration for it.''

The case of *Norton v. United Commercial Travelers of America, Inc.*, 202 Ill. App. 493, is further authority for the same proposition. We hold, therefore, that the

payments made by the defendant of the funeral benefits did not constitute an accord and satisfaction of the beneficiary's claim for benefits under the policy for the accidental death of the insured where at the time of the payment the liability of the insurer for such claim was in dispute. There are here two distinct claims, one of which is in dispute, and the other of which is undisputed, and there is a payment of the undisputed claim, and no payment of the disputed claim or any portion thereof. It further appears that the defense of accord and satisfaction is without merit for it was never pleaded to the first count of the complaint. It was pleaded to the second count of the complaint. Section 43 of the Civil Practice Act [Jones Ill. Stats. Ann. 104.043] reads as follows: "That the facts constituting any affirmative defense, such as . . . release, satisfaction, discharge . . . and any defense which by other affirmative matter seeks to avoid the legal effect of or benefit the cause of action set forth in the plaintiff's complaint . . . in whole or in part . . . must be plainly set forth in the answer or reply."

The fourth contention of the appellant is that the trial court erred in not permitting the defendant to file an amended answer setting up an additional defense on the day this case was set for trial and was tried. The tendered amended answer presented the defense that the policy in question was automatically terminated because the insured was afflicted with an incurable disease. The pleadings in this case had apparently been settled for more than thirteen months and the facts constituting the new defense were well known to the defendant during all this time. No excuse of whatsoever character is offered by the defendant as to why it was thus delayed. An application for leave to amend an answer under such circumstances is addressed to the sound discretion of the trial court, and there being no reasonable explana-

tion offered as to why this defense was not presented in an answer long before the calling of the case for trial, the court properly did not permit the same. (*County of Winnebago v. Cannell,* 376 Ill. 277, at page 282.)

Fifthly, the defendant also argues at great length that the trial court committed reversible error in permitting the plaintiff to testify as to the statements made by her husband a few seconds after she heard him fall with a thud upon the floor beneath the stairway. It is argued by the defendant that this was hearsay and not admissible as a part of the res gestae. It appears that the utterances of the decedent, namely, that he slipped and fell over the railing some seven steps above, was made within a very brief time after the insured had fallen upon the floor, and while he was lying there suffering pain, and before he had time to fabricate or formulate any version of what had happened. Under such authorities as *Morris v. Central West Casualty Co.,* 351 Ill. 40, and *Travelers Ins. Co. v. Mosley,* 8 Wall. (U. S.) 397, 19 L. Ed. 437; *Zwierzycki v. Metropolitan Life Ins. Co.,* 316 Ill. App. 345, we are justified in holding that the foregoing testimony was clearly admissible as an exception to the hearsay rule.

We hold, therefore, that the jury was abundantly justified in reaching the verdict they did, and, finding no reversible error, the judgment entered on that verdict should be, and is affirmed.

*Judgment affirmed.*