Nitrin, Inc., a Corporation, International Minerals & Chemical Corporation, a Corporation, and Protection Mutual Insurance Company, a Corporation, Plaintiffs-Appellees, v. American Motorists Insurance Company, a Corporation, Defendant-Appellant.

Gen. No. 67–57.

Third District.

April 17, 1968.

Clausen, Hirsh, Miller & Gorman, of Chicago, and Reidy, Katz, McAndrews, Durkee & Telleen, of Rock Island, for appellant.

Sidley, Austin, Burgess & Smith, of Chicago, Bozeman, Neighbour, Patton & Henss, of Moline, and Robins, Davis & Lyons, of Minneapolis, Minnesota, for appellees.

ALLOY, P. J.

This cause arose as a declaratory judgment action brought by plaintiffs, Nitrin, Inc., and International Minerals & Chemical Corporation, (to which we will refer as "Nitrin") and Protection Mutual Insurance Company as against defendant, American Motorists Insurance Company, seeking a judgment declaring and determining that the explosion which occurred at the Nitrin plant near Cordova, Illinois, on November 24, 1963, was a loss covered by the policy issued by American Motorists. American Motorists denied coverage on the ground that the rupture was caused directly or indirectly by fire, a risk covered by the policy issued by Protection Mutual (another of Nitrin's insurers). Following American Motorists' denial of coverage, Protection Mutual joined as a plaintiff in the action.

The cause was tried by the court without a jury. The trial lasted almost three weeks following which the trial court entered judgment in favor of Nitrin and International Minerals, concluding that the loss on November 24, 1963, was one insured by American Motorists under its policy. The court found that the loss was not directly or indirectly caused by fire. The losses involved are for interruption of business of the plaintiff Nitrin.

On review in this Court, defendant American Motorists Insurance Company contends (1) that the trial court's decision in concluding that there was no antecedent and independent hostile fire as the source of the explosion, was contrary to the manifest weight of the evidence (2) that the trial court abused its discretion in denying leave to defendant to amend and present an additional policy defense and (3) that the trial court erred in denying defendant's motion for judgment in its favor on the plead-

ings on the ground that a reply was not filed denying certain affirmative matter in defendant's answer.

It appears from the record that Nitrin was in a joint venture with Northern Natural Gas Company and International Minerals in operating a modern fertilizer plant on a tract located on the Mississippi River near Cordova, Illinois. The installation was designed to produce three basic forms of nitrogen fertilizer—ammonia, ammonium nitrate and urea. The raw materials used to make ammonia ($NH_3$) are air, natural gas and steam. Natural gas or methane, is made up of hydrogen and carbon. In air, there is a mixture of four parts of nitrogen and one part of oxygen with other gases making up about 1% of the mixture. Water, of course, is a combination of hydrogen and oxygen. The first step in making ammonia is to break down the methane, freeing the hydrogen from the carbon. Natural gas and steam are introduced into the primary reformer, the first vessel in the "stream" of vessels used in the process. Steam is used to break down the methane in the primary reformer in the presence of a catalyst and to supply more hydrogen and oxygen to the process. The primary reformer is also a furnace since there are burners used to heat up the process gas and steam in the unit. The partially reformed gas, which is called "process gas," exits from the primary reformer and passes to the secondary reformer. The problem in the instant case arose in the secondary reformer.

It is in the secondary reformer that air is introduced into the process. The gas is piped into the secondary reformer near the top. Air is then introduced in the secondary reformer at a pressure of about 300 lbs. per square inch at 300° F. The air comes in to what is known as the "air ring" of the secondary reformer. The air ring is about 8 inches in diameter near the top of the secondary reformer. Four inlet pipes come out of the air ring and rise vertically and, thereafter, turn laterally into the top portion or dome of the secondary reformer. Located

in this secondary reformer is also a metallic nickel catalyst. An exothermic reaction takes place in the secondary reformer which causes the oxygen to separate from the nitrogen and combines with carbon which is present in the process gas forming carbon dioxide and carbon monoxide. As a result of the exothermic-heating generating reaction, the temperature of the combination of the process gas is increased to between 1880° F and 1980° F. The process gas then leaves at a temperature of from 1700° F to 1750° F. There is no evidence that fire exists in the secondary reformer while this controlled exothermic reaction takes place.

After the gases leave the secondary reformer they pass through various other vessels and equipment along the line to complete the process of making ammonia. At all stages of the process there are devices which measure, regulate and control the component parts of the entire system. The devices and controls measure and record, among other things, temperatures, pressure and rate of flow of the gases involved in the process.

The record shows that at about 2:35 a. m. on the morning of November 24, 1963, the pressure controller in the air line which fed compressed air into the secondary reformer froze. The result was that the secondary reformer was shut off for about an hour. During this period the process gas continued to flow into the secondary reformer but it was vented out. The air line was repaired, and a Mr. Kreuder, the operator at this time, stated that he slowly reintroduced air into the secondary reformer. This was approximately at 3:40 or 3:45 a. m. He noted a temperature rise indicating the exothermic reaction had begun. He testified that he did not notice anything out of the ordinary as he reintroduced the air. Approximately 6 minutes later there was a loud explosion as a rupture occurred in the air ring surrounding the secondary reformer. The rupture in the pipe was about 18 inches long. As a result of such rupture it took

201

a period of 10 days to place the plant back in operating condition. It was the loss from such interruption of business which is the basis of the action before us.

The plaintiff-manufacturer Nitrin had a Boiler and Machinery policy with American Motorists Insurance Co. and also had a policy with Protection Mutual covering fire and extended perils other than those covered under the boiler policy. Both policies provided for coverage for loss of use and occupancy due to the perils covered by the particular policies. As we have indicated, Protection Mutual denied coverage stating that the loss resulted from an explosion. American Motorists denied coverage stating that the loss was caused directly or indirectly by an antecedent hostile fire and was, therefore, excluded under its policy.

■■ The primary issue before us is whether or not the trial judge made a finding against the manifest weight of the evidence in concluding that the loss was covered under the American Motorists policy. In this connection we have frequently stated on appeal that the decision of a trial judge on questions of fact must be palpably and clearly erroneous even when considering the evidence in a light most favorable to appellees (LaSalle Nat. Bank v. Wieboldt Stores, Inc., 60 Ill App2d 188, 210, 208 NE2d 845; Lubin v. Goldblatt Bros., Inc., 37 Ill App2d 437, 441, 186 NE2d 64). We note that in the case before us the explosion occurred inside the secondary reformer. While we have briefly summarized some of the salient facts in connection with this case, it is notable that no one actually saw the explosion or was even in the room when it occurred. The evidence as to the cause of the explosion consisted principally of testimony as to charts, readings on dials, examination of the damaged pipe, and theories of witnesses as to how such explosion might have occurred in the light of circumstances prior to and just after the explosion.

The principal witness for American Motorists, a Dr. Lewis, had a theory that the explosion resulted from an antecedent and hostile fire. He asserted that during the period when the secondary reformer was being started up again, after the air had been shut off, there was a fire or flame in the dome of the reformer. He concluded that this was not the normal operating flame because it occurred during the starting of the process after the air had been shut off for about an hour. He stated that these unnatural flames came as a result of delayed ignition which occurred because of an improper ratio of air to fuel when the compressed air was again forced back into the reformer. He concluded that the flame went down the laterals to the air ring (where it would not normally be) as two separate flame fronts, and that the two flame fronts then each came around the air ring where they met causing an explosion. Dr. Lewis' conclusion was that there was a combustible mixture in the air ring where the explosion occurred because there was dead air in that particular section of the air ring and hydrogen mixed with the dead air during the hour that the air was not being forced into the reformer.

While the recital of facts herein is oversimplified, there was specific testimony to refute Dr. Lewis' conclusions and virtually every important element of his theory of an independent and antecedent and hostile flame causing the explosion. The plaintiffs' testimony tended to show that there was no possibility of a stagnant build-up of explosive gas in the area of the air ring where the explosion occurred. The evidence tended to show that without such explosive gas there could not have been an explosion under the theory of defendant as testified to by Dr. Lewis. There was also testimony that there was no delayed ignition in the reformer which could have created the flame, theoretically postulated by Dr. Lewis, to ignite the supposed combustible gas in the air ring. There was also

direct testimony by the plaintiffs' witness, who introduced the fuel mixture into the reformer, that the mixture in the dome was not abnormal but was normal as the flow of gas had also been reduced along with the air input. This witness was corroborated by two other witnesses who testified that when the air was put back into the reformer there was normal reaction in the secondary reformer and no delayed ignition.

█ The evidence on behalf of plaintiffs basically tended to show that the explosion was not the result of an antecedent and hostile fire as contended for by American Motorists. On the basis of the record, therefore, we must conclude that the decision of the trial court was not against the manifest weight of the evidence since the trial court had the benefit of hearing all of the witnesses. We must, therefore, conclude that the trial judge did not commit reversible error in stating his conclusion as to the causative factors which produced the explosion.

The second issue presented by defendant is the assertion that the trial court abused its discretion in denying defendant's motion to amend its answer. The motion was made over two years after the complaint had been filed in the declaratory judgment action. American Motorists attempted to amend the answer to set up a defense based upon the definition of an "accident" as covered in the policy. The amendment set forth a phrase in the policy which said:

> "but Accident shall not mean . . .
> "(f) explosion of gases within the furnace of any Object or within the gas passages therefrom to the atmosphere."

It was contended by American Motorists, at that time, that it had just learned that this defense was available due to correspondence with Protection Mutual Insurance Company.

We have frequently observed that the question of permitting amendments to pleadings rests within the reasonably-exercised discretion of the trial judge (Klinke v. Great Northern Life Ins. Co., 318 Ill App 43, 54–55, 47 NE2d 506). We do not feel that there was an abuse of discretion by the trial judge in refusing to allow the amendment in the case before us. American Motorists had an opportunity to investigate the scene of the explosion in dealing with the insured Nitrin. It had a representative on the scene the day of the explosion and every source of information was apparently available to it with respect to the explosion. Pleadings had been settled. To allow the amendment at the time the request was made would again open up problems of discovery in depositions. No persuasive reason was given why defendant American Motorists did not discover the defense sooner and there was actually no showing that its failure to discover the defense was due to the fault of any party other than American Motorists.

We also note that the evidence at the trial disclosed that American Motorists' contention with respect to the "furnace" exclusion would not have been supported by the evidence. The secondary reformer is an unfired pressure vessel and has no exterior heat source (such as the primary reformer referred to) and could not be classified as a "furnace." The air line which ruptured was not a gas passage from the secondary reformer to the atmosphere (a chimney) but was a line leading from the compressor delivering air to, and not from, the secondary reformer. It, therefore, appears from the record that even if the contention had been raised by a timely amendment, it is difficult to conceive of any evidence which could have been presented by American Motorists on this issue which could have affected the outcome of the case.

The final issue is whether the trial judge committed reversible error in failing to grant a motion for judgment

for defendant on the pleadings on the theory that plaintiff had failed to reply to an affirmative defense. The complaint for declaratory judgment alleged that the loss by explosion was covered by the American Motorists' policy. American Motorists denied liability, contending that the loss was caused by a risk which was covered by the fire policy of Protection Mutual. This denial was based on the premise that the loss was caused directly or indirectly by fire. Plaintiffs had alleged specifically that the loss was due to an explosion against which defendant had insured them.

■ ■ We note that the complaint clearly set forth that American Motorists had issued the general boiler and machinery policy and that a fire policy had been issued by Protection Mutual. It was asserted in the complaint that the policies were interrelated and mutually consistent, so that Protection Mutual carried the risk of certain types of loss and American Motorists carried the risk of other types of loss. It was also alleged that the explosion and resulting damage was a risk covered by American Motorists policy. The answer of defendant asserted that the risk was not covered by American Motorists on the ground that the loss was caused directly or indirectly by fire, and that the explosion and damage resulted from a fire, and, therefore, was a risk covered by Protection Mutual. In Farley v. Security Ins. Co. of New Haven, Conn., 331 Ill App 448, 73 NE2d 662, the Appellate Court stated, in considering a similar problem, that a reply to a contention that plaintiff had violated policy provisions was unnecessary where action was filed upon the policy. The assertion in the instant case that the damage resulted from an explosion coupled with the recital as to coverage of risks by American Motorists as to explosion and Protection Mutual as to fire similarly made a further reply to the American Motorists defensive contention unnecessary. We believe the court in the case before us was correct in denying the motion. Clearly, an affirma-

tive defense can be anticipated and denied by the complaint thereby making a reply unnecessary.

 Under the procedural rules in this State, it has been asserted that where a complaint meets and denies matters set up in the answer, no reply to the answer is required (Schiff v. Schiff, 25 Ill App2d 157, 165, 165 NE2d 713). We feel that this rule should be construed liberally. Decisions of trial courts based upon a careful review of the evidence should not be reversed upon a purely technical interpretation of pleadings. We must also consider that defendant waived such question of failure to reply by offering evidence with respect to the affirmative defense (Schiff v. Schiff, supra; Pree v. Hymbaugh, 23 Ill App2d 211, 162 NE2d 297; Cienki v. Rusnak, 398 Ill 77, 75 NE2d 372).

Since we find no reversible error in the record, the judgment of the Circuit Court of Rock Island County will, therefore, be affirmed.

Judgment affirmed.

STOUDER and CULBERTSON, JJ., concur.