MAYFAIR CONSTRUCTION COMPANY, INC., Plaintiff-Appellee, *v.*
SECURITY INSURANCE COMPANY OF HARTFORD, Defendant-Appellant.

First District (5th Division)　No. 62680

Opinion filed August 5, 1977.

Schaffenegger, Watson and Peterson, Ltd., of Chicago (Randall L. James and Donald G. Peterson, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (Don W. Fowler and Hugh C. Griffin, of counsel), for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

In this action on a liability insurance policy, a jury returned a verdict in favor of defendant, Security Insurance Company of Hartford. The trial court granted a judgment notwithstanding the verdict to plaintiff, Mayfair Construction Company, in the amount of $11,083.60 plus interest accruing from December 20, 1968. This appeal by defendant is from an order denying a motion to vacate that judgment and awarding prejudgment interest. The following issues are raised for review: (1) whether certain terms and conditions of the insurance policy prohibit this action; (2) whether plaintiff has standing to bring this action; and (3) whether plaintiff was entitled to prejudgment interest. We affirm the judgment notwithstanding the verdict, but we reverse the award of prejudgment interest.

Plaintiff filed suit on August 6, 1970. At trial, defendant presented no witnesses. Plaintiff presented four witnesses: (1) Angelo J. Polvere, the vice-president of Mayfair Construction Company; (2) Albert W. Gasper, a University of Illinois construction engineer; (3) Frank Houck, the director of the University of Illinois' physical plant department; and (4) Frank E. Gorski, the supervisor of the University of Illinois' pharmacy store. The pertinent facts established by their testimony may be summarized as follows: Plaintiff entered into a contract with the Illinois Building Authority, University of Illinois (University). Plaintiff agreed to build an addition to one of the University's buildings in Chicago. The contract obligated plaintiff to keep all openings in the walls of the existing building covered and "weathertight" in order to prevent water from entering the building. Further, plaintiff was obligated to keep excavations free from water, through the use of pumps if necessary. Plaintiff was obligated not to disturb any existing underground sewers. Also, plaintiff agreed to "make good" any damage due to its failure to meet the contract obligations. Pursuant to its policy, defendant provided plaintiff with insurance against potential contractual liability.

During plaintiff's construction of the addition, an excavation was dug immediately adjacent to the existing building. An opening was made in the foundation of that building. The opening was covered with plywood. Gasper testified that the covering "wasn't solid enough and it wasn't braced to withstand water that got into the excavation." On June 10, 1967, a heavy rain fell on the construction site. Gasper observed that rainwater, which had built up in the excavation, came through the plywood covering in the foundation of the existing building. Consequently, classrooms and a pharmacy were flooded to a considerable depth. Plaintiff had not provided the pumps necessary to keep the excavation dry. In addition, plaintiff had not repaired an underground sewer line. As a result of the

excavation, the line was broken and sump pumps in the existing building were unable to prevent water damage.

On June 13, 1967, plaintiff sent Schwartz-Kruger & Company (Schwartz), the firm which had arranged the purchase of the insurance policy, a written report of the June 10th damage to the University's building. Plaintiff wanted Schwartz to "take the necessary steps" under the policy. On November 21, 1968, the University informed plaintiff that there would be a claim made against plaintiff for the water damage, in the amount of $11,294. Later, on December 23, 1968, the amount was decreased to $11,083.60 in a formal claim which showed the costs incurred by the physical plant department and the pharmacy as a result of the water damage. In a letter, dated November 22, 1968, plaintiff notified Schwartz that the University was preparing a claim. Defendant's letter to plaintiff, dated December 20, 1968, read as follows:

> "We have received your letter of November 22, 1968 sent to your agent. As you know, there is no coverage under your policy for damage of this nature.
>
> It also appears that it would be difficult if not impossible for the University of Illinois to prove negligence on your part for the 'Act of God' involved.
>
> We, therefore, at this time shall be unable to furnish coverage for this loss."

The University withheld $11,083.60 from the amount due plaintiff on the construction contract. Polvere testified that plaintiff never "acquiesced" in the withholding of the money and plaintiff never agreed on the amount to be withheld. Plaintiff, however, never sued the University.

In a letter to Schwartz, dated November 3, 1969, defendant stated that there is "no liability under the policy contract for the alleged claim," but defendant offered to defend any action that might be brought against plaintiff by the University. Polvere signed three statements prepared by one of defendant's investigators concerning the water damage. Those statements did not show that the water came into the existing building through the plywood covered opening in the foundation. Polvere had not witnessed what occurred at the construction site on June 10, 1967, but he had received reports from Gasper who was an occurrence witness. When Polvere signed the statements, he knew about the opening and the role it played in the occurrence.

On June 1, 1973, after plaintiff had rested its case at trial, defendant filed an amended answer to the amended complaint. That amended answer asserted as affirmative defenses certain provisions found in the policy of insurance. The following provisions were allowed to stand as defenses:

"The company will pay on behalf of the insured all sums which the insured, by reason of contractual liability assumed by him under a contract designated in the schedule for this insurance, shall become legally obligated to pay as damages because of

    Y. bodily injury or

    Z. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payments of judgments or settlements.

In the event of loss the named insured shall cooperate with the company and, upon the company's request, shall assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the named insured because of loss with respect to which this insurance applies; and shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses; but the named insured shall not, except at his own cost, voluntarily make any payment, assume any obligation, offer or pay any reward for recovery of stolen property or incur any expense other than as specifically provided in this insurance."

Defendant charged that plaintiff did not comply with those provisions; therefore, plaintiff could not recover. The following provision was stricken from the amended answer by the trial court:

"No action shall lie against the company unless, as a condition precedent thereto there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company."

Also, the trial court refused to give certain jury instructions tendered by defendant, including an instruction regarding the "no action" clause. The court found that the "Act of God" defense, mentioned by defendant in the December 20 letter, was inapplicable, since the construction contract between plaintiff and the University did not mention an "Act of God" as a basis for excusing plaintiff's obligation under the contract.

After the judgment notwithstanding the verdict was entered, defendant

took depositions of Paul Cocose, the president of Mayfair Construction Company, and Edward Schwartz, a partner in the Schwartz firm. In this post-trial discovery, Cocose testified that Schwartz orally agreed to loan plaintiff the sum of $11,038.60 provided that plaintiff repay the money if the sum was recovered from the University or defendant. Plaintiff accepted from Schwartz a check, dated October 30, 1969, in the amount of $11,083.60. Cocose further testified that no attempt was subsequently made to recover from the University. In a post-trial deposition, Edward Schwartz testified that Schwartz, on prior occasions, had made "advances" to its customers who had claims which appeared to be "covered" by the insurance policy. In the event that plaintiff completely failed to recover from defendant, Edward Schwartz would decide whether to collect the money from plaintiff. The post trial affidavit of Edward Schwartz stated that the position taken by defendant in its December 20 letter was improper. The affidavit further stated that a loan was made and that it had to be repaid by plaintiff from the amount of plaintiff's recovery from defendant. In its order denying defendant's motion to vacate the judgment notwithstanding the verdict, the court found that there was a "loan subject to repayment" and that plaintiff had standing to sue defendant. The judgment awarded interest to plaintiff on $11,083.60 from December 20, 1968, the date defendant first denied the claim, under the authority of section 2 of the Interest Act (Ill. Rev. Stat. 1973, ch. 74, par. 2).

OPINION

■■ Defendant alleges that plaintiff violated the cooperation clause of the insurance policy, because the plywood covered opening was not revealed in Polvere's signed statement. We find that defendant is in no position to void the policy by asserting that plaintiff failed to sufficiently cooperate in a defense. In fact, no defense was ever made. After it withheld $11,083.60, the University did not need to bring an action against plaintiff. Thus, defendant never undertook the defense of an action brought against plaintiff. The alleged uncooperative conduct did not prejudice defendant. *Cf. M.F.A. Mutual Insurance Co. v. Cheek* (1977), 66 Ill. 2d 492, 363 N.E.2d 809.

■■ The policy provision regarding voluntary payment is not applicable as an affirmative defense. The provision "contemplates a situation where the insurer is actively engaged in negotiating a settlement or defending a suit. It does not cover a situation where the insurer rejects the claim in advance and says it will not pay under any circumstances." (*American Fire & Casualty Co. v. Kaplan* (D.C. App. 1962), 183 A.2d 914, 915.) In the December 20 and November 3 letters, defendant rejected plaintiff's claim and refused to pay. Moreover, the University withheld

money from plaintiff, and in view of the testimony that plaintiff did not acquiesce, we do not find a compromise and settlement agreement between plaintiff and the University; plaintiff never assumed an obligation through the use of such an agreement. Plaintiff was a victim of the University's action withholding the money. Hence, plaintiff never made a voluntary payment to the University.

Defendant contends that the trial court erred in not allowing defendant to amend its answer by setting forth the "no action" clause as an affirmative defense. Our concern is whether the trial judge exercised sound discretion. (*Klinke v. Great Northern Life Insurance Co.* (1943), 318 Ill. App. 43, 47 N.E.2d 506; reasserted in *Mundt v. Ragnar Benson, Inc.* (1974), 18 Ill. App. 3d 758, 310 N.E.2d 633.) There is no absolute right to amend an answer. (*Banks v. United Insurance Co. of America* (1975), 28 Ill. App. 3d 60, 328 N.E.2d 167.) Indeed, a motion to amend an answer is addressed to the broad discretion of the trial court; in the present case, we find no clear abuse of discretion or reversible error. (See *Nitrin, Inc. v. American Motorists Insurance Co.* (1968), 94 Ill. App. 2d 197, 236 N.E.2d 737; *Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1, 280 N.E.2d 437.) We note that defendant has not offered a persuasive reason as to why the amendment was delayed until plaintiff had rested its case at trial. Before the suit was filed, defendant knew the facts constituting the affirmative defense.

■■ The court acted in accordance with section 46 of the Civil Practice Act which permits amendments "on just and reasonable terms." (Ill. Rev. Stat. 1971, ch. 110, par. 46(1).) When the court ruled against the addition of the "no action" clause defense, it furthered "the ends of justice." (*Banks*, at 64.) Under the facts of this case, the "no action" clause was not available as a defense. In the December 20 and November 3 letters, defendant denied plaintiff coverage for the University's claim. We are unable to give the letters any other interpretation. The correspondence could not more clearly reveal that defendant had no intention of paying the amount of the University's claim. Because defendant denied coverage under the policy, the "no action" clause should not be used against plaintiff. (*Cf. Crest v. State Farm Mutual Auto Insurance Co.* (1974), 20 Ill. App. 3d 382, 313 N.E.2d 679.) In *De Luxe Motor Stages v. Hartford Accident & Indemnity Co.* (1967), 88 Ill. App. 2d 188, 193, 232 N.E.2d 141, the court said:

> "The purpose of the 'no action' clause is to protect the insurer from collusive or overly generous or unnecessary settlements by the insured at the expense of the insurance carrier. It is, however, unfair to the insured to enforce the clause against him when the insurer has erroneously refused to perform the insurance contract."

Defendant erred by denying coverage. In its brief, defendant admits that

if the water entered the University's building through an opening which plaintiff had improperly covered, the damage "would have occurred in connection with operations under the contract and would have been a risk insured by the policy." At trial, there was undisputed testimony which established that the water entered the building through plaintiff's inadequate covering. Furthermore, undisputed testimony established that plaintiff did not carry out its contractual duty to provide pumps for the removal of water. There was ample evidence, undisputed by defendant at trial, that the amount of damage totaled $11,083.60. Defendant cites *J. L. Simmons Co. v. Lumbermens Mutual Insurance Co.* (1967), 84 Ill. App. 2d 98, 228 N.E.2d 227, as support for its assertion of the "no action" clause. The *Simmons* case, however, is distinguishable from the instant case. In *Simmons*, there was no denial of coverage by the insurer and the insured voluntarily satisfied a claim.

■■ In determining whether the judgment notwithstanding the verdict was properly granted, we are presented with a question as to whether all the evidence when viewed in its aspect most favorable to defendant so overwhelmingly favors plaintiff that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Since the aforementioned affirmative defenses are inapplicable and there is liability under the insurance policy, we find that the jury verdict could not stand and the *Pedrick* test was met. Therefore, the judgment notwithstanding the verdict was properly granted.

■■ Defendant argues that the court committed error in refusing to give an instruction regarding the "no action" clause. As shown above, the pleading wherein the clause is located was not allowed as an amendment. The "no action" issue was not before the jury. Therefore, the instruction upon the issue was properly denied. (See *Carrell v. Francona* (1973), 12 Ill. App. 3d 180, 298 N.E.2d 246.) We reject any contention by defendant that the court erred in refusing defendant's instructions. When an instruction is refused, reversible error does not exist unless prejudice is shown. (*Burger v. Van Severen* (1963), 39 Ill. App. 2d 205, 188 N.E.2d 373.) Clearly, because the jury found in favor of defendant, the rights of defendant were not prejudiced by the refusal of an instruction. *McManus v. Feist* (1966), 76 Ill. App. 2d 99, 221 N.E.2d 418.

■■ Defendant also argues that plaintiff does not have standing to sue as the real party in interest, because the loss was paid by Schwartz before suit was filed. In support of this argument, defendant claims that Schwartz is the subrogee of plaintiff. The doctrine of subrogation, however, is inapplicable to the instant case. Schwartz could not be the subrogee of plaintiff unless Schwartz was under a legal or equitable obligation to pay plaintiff the sum of $11,083.60. (*United States v. Greene* (N.D. Ill. 1967), 266 F. Supp. 976.) In other words, the doctrine of subrogation would be applicable if Schwartz was legally liable to plaintiff

for payment of the loss. (*Geneva Construction Co. v. Martin Transfer & Storage Co.* (1954), 4 Ill. 2d 273, 122 N.E.2d 540; reasserted in *National Cash Register Co. v. UNARCO Industries, Inc.* (7th Cir. 1974), 490 F. 2d 285.) The record reflects that Schwartz made a loan. As a lender, Schwartz was a volunteer or intruder, not acting pursuant to any legal liability. A volunteer or intruder cannot be viewed as a subrogee. (*Bost v. Paulson's Enterprises, Inc.* (1976), 36 Ill. App. 3d 135, 343 N.E.2d 168; *First National Bank v. Heatherly* (1972), 8 Ill. App. 3d 1073, 291 N.E.2d 280.) The loan had to be repaid by plaintiff upon recovery from defendant. Also, there was a possibility that Schwartz would demand repayment from plaintiff in any event.

■■ Alternatively, defendant argues that Schwartz was the agent of defendant in payment of $11,083.60, so the acts of Schwartz are considered to be those of defendant. The record has no evidence of an agency relationship. A party alleging an agency relationship must carry the burden of proving the relationship by a preponderance of the evidence. (*Mills v. State National Bank* (1975), 28 Ill. App. 3d 830, 329 N.E.2d 255.) There is nothing in the record which indicates that defendant gave Schwartz authority to pay plaintiff on defendant's behalf, and Schwartz never purported to be acting pursuant to any such authority.

■■ The trial court did err in awarding prejudgment interest to plaintiff, accruing from December 20, 1968. We are aware of *DiLeo v. United States Fidelity & Guaranty Co.* (1969), 109 Ill. App. 2d 28, 248 N.E.2d 669, where the court held that a fire insurance policy is an "instrument of writing" within the meaning of section 2 of the Interest Act (Ill. Rev. Stat. 1957, ch. 74, par. 2). Thus, in *DiLeo*, the court awarded prejudgment interest against an insurer from the date money was due under a policy. That policy expressly provided a specific date when the insurer would be liable for losses to the insured's property. In the instant case, there was no such provision in the liability policy issued by defendant. Interest commences to run on "moneys after they become due." (Ill. Rev. Stat. 1973, ch. 74, par. 2; see 6A Appelman, Insurance Law and Practice §4023, at 14 (1972); *Knickerbocker Insurance Co. v. Gould* (1875), 80 Ill. 388.) Under the circumstances of this case, we cannot conclude that money became due under the policy on December 20, 1968; therefore, plaintiff is not entitled to interest until entry of judgment.

For the reasons presented, the judgment of the Circuit Court of Cook County is modified by deleting therefrom the prejudgment interest, and judgment in the amount of $11,083.60 is affirmed.

Judgment modified and affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.