EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED *v*. STATE EX REL. UNION TRUST COMPANY OF FRANKLIN, ET AL.

[No. 16,592. Filed June 23, 1941. Rehearing denied October 23, 1941. Transfer denied December 8, 1941.]

*J. W. Fessler, Harvey I. Elam, Howard S. Young, Irving M. Fauvre,* and *Howard S. Young, Jr.,* all of Indianapolis, and (*Donald P. Shinn,* of Columbus, of counsel), for appellant.

*Richard LaGrange, White, & Haymaker* and *Barnett & Barnett,* all of Franklin (*William H. Dobbins,* of Columbus, of counsel) for appellees.

FLANAGAN, J.—From 1912 until his death in 1935, Samuel A. Wilson was president of appellee Union Trust Company. From 1912 until his death in 1934, Charles B. Henderson was secretary-treasurer of said company. From 1912 to the time of the death of Henderson, appellee Harry Bridges was assistant secretary-treasurer of said company, and thereafter until December 2, 1937, was secretary-treasurer.

Under § 18-513, Burns' 1933, ·§ 7823, Baldwin's 1934, which requires officers of banking institutions to give bonds to indemnify the institution for "any pecuniary loss it shall sustain of money or other personal property by any act or acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or wilful misapplication," upon the part of any of the officers, said officers gave bond with personal sureties prior to November 28, 1933, and with appellant as surety on and after that date.

The bank was administrator for two estates, the Willard estate and the Hazelett estate.

The three above-named officers of the bank were engaged in a partnership business unconnected with the bank, and to obtain money for use in that business, they had, prior to November 28, 1933, embezzled from the funds at the bank the sum of $12,329.83. The embezzlement was accomplished by charging the amounts as taken against the balance in the account of either the Willard or Hazelett estate. In this manner the sum of $7500.00 had been falsely charged against the Willard estate and $4829.23 against the Hazelett estate. Such was the situation at the time appellant became surety on the bonds of all three officers and such continued to be the situation until after the death of Henderson on May 4, 1934, and the death of Wilson on March 6, 1935.

On March 16, 1935, Robert Short paid into the bank $3,000.00 which he owed the Hazelett estate. The proper and correct entry was made in the cash book and the journal but the $3,000.00 was then posted in the ledger to the credit of the Willard estate instead of the Hazelett estate.

On December 22, 1936, an amount of $8,354.44 due the Hazelett estate from the Hazelett-Van Antwerp account was transferred. The proper and correct entry was made in the cash book and journal but $4500.00 of the amount was then posted in the ledger to the credit of the Willard estate instead of the Hazelett estate.

The bank owned a note signed by appellee, Arthur A. Alexander, for the accommodation of Wilson, Henderson and Bridges, the proceeds of which note had been properly turned over to them for their personal use. On June 27, 1936, Bridges transferred, by an unauthorized check, the sum of $1,000.00 from the Hazelett-Van Antwerp farm account to the credit of said note.

This action was instituted by the bank against the personal sureties on the bonds of Wilson, Henderson and Bridges prior to November 28, 1933, and against appellant as surety on their bonds on and after November 28, 1933. The facts as above set forth are undisputed and are so found specially by the trial court.

The trial court concluded that the posting of the $3,000.00 paid in by Short and the $4,500.00 transferred from the Hazelett-Van Antwerp account to the Willard estate account instead of the Hazelett estate account operated to pay the shortage of $7,500.00 in the Willard estate account and relieved the sureties prior to November 28, 1933, and the estates of Wilson and Henderson from liability for the originally embezzled $7,500.00; that these transactions amounted to new defalcations and created liability on appellant's bond.

The court further concluded that the transaction transferring $1,000.00 from the Hazelett-Van Antwerp account to the Alexander accommodation note amounted to embezzlement of $1,000.00 by Bridges for which appellant is liable as surety on his bond.

The correctness of these conclusions of the trial court are challenged in this appeal.

There are two prerequisites for liability on the involved bonds: First, one of the wrongful acts specified in the statute, and second, a pecuniary loss. The bond in force at the time of the wrongful act which resulted in the pecuniary loss is the bond liable. *Lowry* v. *The State ex rel. Hull* (1878), 64 Ind. 421; *Gosner* v. *State, ex rel. Haskins* (1903), 30 Ind. App. 508, 65 N. E. 764; *Parker* v. *Medsker* (1881), 80 Ind. 155.

It is the general rule that a fidelity bond is not liable for defalcations which occurred prior to its effective

date though they are paid or covered by new defalcations during the effective period of the bond. The reason for the rule is that the original taking was the act which caused the eventual pecuniary loss. *Walker* v. *State* (1911), 176 Ind. 40, 95 N. E. 353; *Ohning et al* v. *The City of Evansville* (1879), 66 Ind. 59; *Royal Indemnity Co.* v. *American Vitrified Products Co.* (1927), 117 Oh. St. 278, 158 N. E. 827; *Gold Seal Assurance Soc.* v. *Aetna Casualty & Surety Co.* (1924), 202 N. Y. S. 674; *Dean* v. *Fidelity & Deposit Co. of Maryland* (1931), 253 N. Y. S. 103; *Fidelity & Casualty Co.* v. *Consolidated Nat. Bank* (1895), (3rd Circuit), 71 F. 116; *Supreme Council Catholic K. of A.* v. *Fidelity & Casualty Co.* (1894), (6th Circuit), 63 F. 48; *First Nat. Bank* v. *National Surety Co.* (1904), (6th Circuit), 130 F. 401; *Aetna Casualty & Surety Co.* v. *First Trust & Savings Bank* (1932), (5th Circuit) 62 F. (2d) 316.

It is the theory of appellees and evidently the theory adopted by the trial court that the above rule is not applicable to the situation in the instant case because: (1) The funds abstracted in the instant case were the funds of the two estates and not the funds of the bank; (2) the bank suffered no financial loss until it was compelled to reimburse the Hazelett estate; and (3) when the funds of the Hazelett estate were credited to the Willard estate the transaction constituted payment of the original defalcation from the Willard estate and a new theft from a different person, the Hazelett estate.

The relationship in which we are primarily interested is the relationship between the embezzlers and the bank, not the relationship between the bank and the two estates.

An estate is not an entity capable of having the physical custody of money. The money was in the possession

of the bank either in its ordinary capacity as a banking institution or in its capacity as administrator.

The embezzlers took the money from the bank and it seems immaterial whether the money so taken was the money of the bank or money entrusted into its care for the estates. If it was the money of the bank, the bank's pecuniary loss is obvious. If it was money which the bank merely held for the estates and for the safe custody of which it was absolutely liable as against the wrongdoing of its officers, then the bank became immediately liable for its replacement upon its theft by the officers.

It also seems immaterial *when* the bank actually suffered the pecuniary loss so long as it is clear what acts caused the loss, for the bonds in force at the time of the acts of dishonesty which caused the loss would be liable and not the bond in force at the time the loss was actually suffered.

The vital question then is: What acts of dishonesty caused the pecuniary loss to the bank?

It cannot be questioned that when the three officers originally took the money from the bank and used it in their private enterprise the bank suffered at least a potential loss. Assuming that the money so taken was the money of the Willard estate, the bank immediately became liable for its replacement; and, upon discovery and proper demand, it would be required to make the replacement. When that event occurred its loss became certain and the liability of the bonds in force at the time of the taking became fixed.

The bank did replace the money so taken and did therefore suffer the certain pecuniary loss. But appellees insist that when the replacement was made it was made, not to the Willard estate but to the Hazelett estate; that the erroneous crediting of Hazelett money

to the Willard estate amounted to payment of the original thefts and released the original embezzlers, their estates and their bondsmen; and that these later transactions were the dishonest acts which caused the pecuniary loss to the bank.

We cannot agree with appellees' contention. The bookkeeping transactions whereby the Hazelett funds were credited to the Willard estate operated only to cover up the original thefts. The amount for which the bank was liable remained unchanged. The amount of its eventual loss was the same. The only change in the situation was a change in the name of the account in which the bank had to make the replacement. One of the embezzlers could not by a second wrong in the nature of a bookkeeping entry, accomplish payment for himself and his partners in crime of the first theft so as to relieve them and their estates from civil liability.

These later transactions occurred within the four walls of the bank. Nothing left the bank. They were made in the books of the bank of which it had custody and control. Upon the discovery of these transactions, the bank could have corrected its books to show the proper deposits and nobody would have been harmed and no loss sustained by anyone, had it not been for the fact that there was already a shortage in the Willard account because of the original wrongful taking and the fact that the funds so taken had passed out through the door of the bank and beyond its custody and control.

We think it is obvious that the acts which caused the bank pecuniary loss were the acts of the three officers in taking money from the bank, putting it in their pockets, carrying it out of the bank, and using it in their private business where it was beyond the bank's control.

The later bookkeeping transactions, which occurred within the four walls of the bank, which could have been corrected by it, and which did not result in the loss of funds from the bank's custody, did not cause it pecuniary loss.

Likewise when the sum of $1,000.00 was transferred from the Hazelett-Van Antwerp account to the Alexander accommodation note nothing was accomplished except to have the books fail to speak the truth. It does not appear by the record that the Alexander note was surrendered, that the obligation was lost to the bank, or that anything was required to place the parties in *status quo* except a bookkeeping entry to correct the records. No pecuniary loss was suffered by the bank.

Inasmuch as all the funds taken by the officers were taken prior to November 28, 1933, they, their estates and the sureties on the bonds in effect prior to that date, are alone liable and there is no liability on appellant.

Judgment reversed with instructions to the trial court to restate its conclusions of law and render judgment in conformity with this opinion.

NOTE.—Reported in 34 N. E. (2d) 936.