**JOHN B. WHITE, INC.**

v.

**PROVIDENCE WASHINGTON INSUR-ANCE CO., Defendant and Third-Party Plaintiff,**

v.

**Jules BOYMEL, Third-Party Defendant.**

**Civ. A. No. 43003.**

United States District Court,
E. D. Pennsylvania.

July 13, 1971.

---◆---

Albert L. Bricklin, Bennett, Bricklin & Saltzburg, Philadelphia, Pa., for plaintiff.

James T. Giles, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

John R. Warner, Philadelphia, Pa., for third-party defendant.

## OPINION

EDWARD R. BECKER, District Judge.

This is a civil action to collect the proceeds of a commercial crime coverage insurance policy covering employee embezzlement, issued to plaintiff John B. White, Inc. ("White") by defendant Providence Washington Insurance Co. ("Prov-Wash") on October 1, 1966.[1] Prov-Wash has denied liability under the policy and has joined White's auditor and treasurer, Jules Boymel, as a third-party defendant on the allegation that, if it is liable under the policy, it is subrogated to White's rights and is entitled to indemnity from Boymel as a result of Boymel's negligence. This opinion shall constitute our findings of fact and conclusions of law under Fed.R.Civ.P. 52 (a).

■ White is a corporation engaged in the sale of new and used automobiles. Prior to October 1, 1966, White was insured under a crime coverage insurance policy issued by Royal Globe Insurance Company. On September 30, 1966, White's policy with Royal Globe terminated, and the Prov-Wash policy, with a $15,000 face amount, went into effect. On January 21, 1967, while Prov-Wash's policy was in effect, White discovered that substantial sums had been embezzled over a period of time by White's finance manager, Gerald Belz, through a series of transactions known as accounts receivable "lapping". "Lapping" is a term used in the accounting profession to denote a scheme whereby someone diverts cash received from customers' accounts receivable to his own use and thereafter, by successive book entries, credits the customers' accounts receivable as having been paid by using funds received *subsequently* from other customers in payment of their accounts receivable. Belz, as finance manager, received cash and check payments from customers, prepared the deposit slips and prepared the book entries crediting customers' accounts. Thus, Belz was in a position where he could receive cash from one customer and credit it as payment to a previous customer's account from which he had actually taken the money.

---

1. Jurisdiction is based upon diversity of citizenship.

The task of determining the actual loss of funds was assigned to William T. Duke, White's comptroller, who had an impressive background in the automotive sales field. Duke's procedure was as follows. He first listed all unpaid accounts receivable on the books as of January 21, 1967. Thereafter, by direct confirmation with each customer, he ascertained that, of the $82,870 listed as amounts unpaid as of January 21, 1967, only $30,503.70 was actually owed to White, thereby establishing that $52,366.30 had already been paid by customers but had not been credited to their accounts and had been diverted at some prior time from the company's funds. However, in view of the fact that the period of Belz' embezzlement bridged the terms of two insurance policies, it was necessary that further calculations be made in order to establish the amount of the Prov-Wash loss.[2]

In order to establish the Prov-Wash loss, Duke's first step was to make a retroactive audit as of September 30, 1966, the day on which Royal Globe's policy terminated and Prov-Wash's insurance policy went into effect. By listing all accounts receivable on the books as of September 30, 1966, Duke ascertained that the total accounts receivable was $68,311.37; but direct confirmation with the customers showed that only $30,530.09 was owed at that time. He thus found that as of September 30, 1966, there were missing funds of $37,781.28. Since as of January 21, 1967 the funds missing amounted to $52,366.30, by the process of subtraction (i. e., $37,781.28 from $52,366.30), Duke established that during the relevant period of the Prov-Wash policy, the loss increased by $14,585.02, which constitutes the amount of White's claim.

The record contains a stipulation that Belz embezzled substantial funds, far in excess of $14,585.02, and that his em-bezzlement was ongoing during the period of the Prov-Wash policy.

White submitted a claim to Prov-Wash for $14,585.02. The proof-of-loss was submitted on Prov-Wash's form and was accompanied by work sheets prepared by Duke showing his audits of the accounts receivable as of September 30, 1966 and January 21 1967. At no time thereafter did Prov-Wash ask for additional information to determine the loss; nor did it send in its own auditors to verify Duke's figures, although the record shows that they were available to it.

Prov-Wash produced as an expert witness at trial one David W. Brenner, a certified public accountant. Brenner testified that a better procedure for determining the loss would have been for White to have: (1) traced the funds listed as diverted as of September 30, 1966 and January 21, 1967 back to the original customer accounts where the money was actually diverted; (2) determined the sales of automobiles from October 1. 1966 through January 21, 1967 and verified the sales records by checking title to the auto and by direct communication with the customers as to when and how much was paid on these accounts; and (3) traced these customers' payments to the company to see when the defalcation existed and whether or not their funds had been used to cover funds taken previously from other customers' accounts.

Brenner conceded, however, on cross-examination, that the method used by Duke was not an improper one and could indeed show the amount of the loss. He also agreed that: (1) while the tracing method he suggested would indicate the date on which the funds were originally taken, it might not locate the actual account from which the money was taken; and (2) the accounting fee cost of tracing by his suggested method might exceed the amount of the loss.

---

2. The Royal Globe loss was adjusted and is not before us.

On the basis of the foregoing, we find that White has met its burden of proof and is entitled to recover on the full amount of its claim against Prov-Wash ($14,585.02).

■ We reject as meritless Prov-Wash's argument that White sustained no loss during the policy period because the funds remitted by the individuals contained on the work sheets covering the period of the Prov-Wash policy were received by White and deposited in its bank account. This overlooks the admitted fact that these funds were used to cover previous shortages in other customer accounts as well as the fact that the embezzlement was continuing, and, as the calculations show, waxing during the period of the Prov-Wash policy. *Cf.* Edmunds-Bouvier Savings & Loan Ass'n v. New Amsterdam Casualty Co., 8 Pa. D. & C.2d 229 (Phila.C.P.1956), aff'd per curiam, 389 Pa. 79, 132 A.2d 181 (1957).

■ The remaining issue is that of Prov-Wash's subrogation claim against Boymel. We will resolve it on the merits, notwithstanding the fact that payment has not yet been made by Prov-Wash to White.[3] Contending, in essence, that Boymel was in a position to discover Belz' embezzlement of corporate funds, it alleges that his failure to do so constitutes a breach of some duty which he owed to Prov-Wash by virtue of his corporate capacities.

■ Prior to 1965, Boymel, a certified public accountant, was White's outside accountant. In that capacity, he made periodic unaudited statements for White until 1965. At that time, he was retained as White's treasurer and internal auditor for the purpose of watching over the interests of the controlling shareholder, who had left the active management of the company. Boymel's testimony was uncontradicted that his status as treasurer was purely perfunctory, and that as internal auditor, his responsibility was solely to see that the books were prepared and that statements and tax returns were prepared. As an officer of the corporation, he was not permitted, under the rules of the American Institute of Certified Public Accountants, to conduct an audit of the company and prepare certified returns.

Two further facts bear mention. First, when Boymel "came aboard" with White, he was informed that prior shortages had occurred, but was told that these shortages were small and that his job was not to track them down. Second, in early 1966, White had been audited by a team of outside auditors of Ford Company in connection with a proposed sale of White's business. The auditors were all certified public accountants and conducted a two-week audit of the books and records of the company. During that audit, nothing was discovered out of order. For these reasons, we find that there is no evidence that Boymel was negligent, even if he owed a duty to Prov-Wash, which we conclude he did not.

■ Prov-Wash maintains that Boymel, as internal auditor, is liable to it for his failure to discover the embezzlements which occurred while he was in White's employ. There is no evidence, however, to indicate that it was Boymel's responsibility to formally audit the books of the company and track down shortages. A cause of action in negligence is based upon a breach of duty, and where no duty exists, there can be no recovery. *See, e. g.,* Dorn v. Leibowitz, 387 Pa. 335, 127 A.2d 734 (1957);

---

3. The general rule is that there can be no subrogation until the party claiming the right of subrogation has actually paid the debt in full. *See* Roberts v. Fireman's Ins. Co., 376 Pa. 99, 101 A.2d 747 (1954) ; Gawthrop Co. v. Fibre Specialty Co., 257 Pa. 349, 101 A. 760 (1917) ; Insurance Co. of N. Am. v. Fidelity Title & Trust Co., 123 Pa. 523, 16 A. 791 (1889).

Stevens v. Reading Street Ry., 384 Pa. 390, 121 A.2d 128 (1956). Prov-Wash did not even attempt to controvert Boymel's testimony, to the effect that he merely acted as an overseer of the bookkeeping function and as a preparer of tax returns, and had no duty to investigate the propriety of the company's accounts receivable.

■ In seeking to hold Boymel liable as treasurer of the corporation, Prov-Wash contends that White's by-laws provide certain duties to be handled by the treasurer, and that Boymel's failure to maintain a close watch over the activities of Belz constituted negligence in his capacity as treasurer. Prov-Wash has been unable to cite any cases in which the courts have held that, under Pennsylvania law, a treasurer has statutory non-delegable duties, the failure of which to perform gives rise to a cause of action in negligence. Absent any statutory duty, the facts clearly indicate that Boymel was treasurer in name only, and that he had no duties to perform in that regard. As we have already stated, there cannot be a cause of action in negligence for breach of a duty when, in fact, no duty exists. Accordingly, we hold that Boymel has breached no duties to either White or Prov-Wash.

For the reasons above stated, we hold that White is entitled to judgment against Prov-Wash in the sum of $14,585.02, and that Boymel, the third-party defendant, is entitled to judgment against Prov-Wash.

Under the applicable (Pennsylvania) law, White is entitled to interest at the rate of 6%, which we calculate to be the sum of $3,719.18. The combined amount of principal and interest, however, exceeds the face amount of the policy ($15,000). We will withhold our final Order pending receipt of memoranda from the parties, to be submitted within two weeks, on the subject of interest. *Cf.* Hafer v. Schauer, 429 Pa. 289, 239 A.2d 785 (1968).